**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **GERALDINE DUENAS,** | Case No. 2:14-cv-01186-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN,** | |
| Commissioner, Social Security Administration, | |
| Defendant. | |

Rory Joseph Linerud, Linerud Law Firm, P.O. Box 1105, Salem, OR 97308-1105. Of Attorneys for Plaintiff.

Billy J. William, Acting United States Attorney, Janice E. Hebert, Assistant United States Attorney, U.S. Attorney's Office, District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, OR 97204-2902; Alexis L. Toma, Special Assistant United States Attorney, Social Security Administration, Office of the General Counsel, 701 Fifth Avenue, Suite 2900, Mailstop 221A Seattle, WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Geraldine Duenas seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits. For the following reasons, the Court AFFIRMS the Commissioner's decision.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance. . . ." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Ms. Duenas filed an application for Disability Insurance Benefits on June 7, 2010, alleging disability beginning on June 15, 2009. AR 52. She was 55 years old at the alleged disability onset date and was 59 years old at the time the Administrative Law Judge ("ALJ")

PAGE 2 – OPINION AND ORDER

issued his opinion. AR 170. Ms. Duenas alleged disability due to numerous impairments, primarily relying on: fibromyalgia; low back pain syndrome; diabetes mellitus; hypertension; obesity; lumbosacral radiculopathy; obstructive sleep apnea; right foot pain status post-bunionectomy; restless leg syndrome; anxiety disorders; dysthymia; and carpal tunnel syndrome. AR 54-55. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an ALJ. AR 52. On December 6, 2012, the ALJ found Ms. Duenas was not disabled. AR 62. The Appeals Council declined Ms. Duenas's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-3. Ms. Duenas seeks judicial review of that decision.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520(a)(4) (DIB), 416.920(a)(4) (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ applied the sequential analysis in his December 6, 2012 decision. AR 52-62. The ALJ began his opinion by noting that Ms. Duenas met the insured status requirements of the Social Security Act through June 30, 2014. AR 54. At step one, the ALJ determined Ms. Duenas had not engaged in gainful activity since the alleged onset date, June 15, 2009. *Id.* At step two, the ALJ found Ms. Duenas had the following severe impairments: fibromyalgia; low back pain syndrome; diabetes mellitus; hypertension; obesity; lumbosacral radiculopathy; obstructive sleep apnea; right foot pain post-bunionectomy; restless leg syndrome; and carpal tunnel syndrome. *Id.* The ALJ found Ms. Duenas's mental impairments were not severe, because her limitations to activities of daily living, social functioning, and concentration were mild and she had no episodes of decompensation. AR 55-56. At step three, the ALJ found Ms. Duenas did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. AR 56.

The ALJ next determined Ms. Duenas's RFC and found that she could perform sedentary work, except that she could occasionally lift and carry articles such as docket files, ledgers, and

small tools; she could occasionally use her right lower extremity for foot control operation; she could stand or walk for about two hours and sit for six hours in an eight-hour workday; she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but could never climb ladders, ropes or scaffolds; and she should avoid concentrated exposure to extreme cold, excessive vibration, poorly ventilated areas, pulmonary irritants, unprotected heights, and moving machinery. AR 57. At step four, the ALJ found that Ms. Duenas could perform her past relevant work as an office manager, as she had actually performed it. AR 61-62. Thus, at step four, the ALJ concluded that Ms. Duenas was not disabled from July 15, 2009, through the date of the decision, December 6, 2012. AR 62.

## DISCUSSION

Ms. Duenas contends that the Commissioner's decision is not supported by substantial evidence and is not based on the application of proper legal standards. She alleges the ALJ erred by: (1) improperly rejecting the opinion of Dr. Stewart Swena; (2) failing to comply with Social Security Ruling ("SSR") 82-62[1] in concluding at step four that Ms. Duenas could perform her past relevant work; (3) determining an RFC that did not have support in the medical evidence; (4) failing to consider the medical-vocational guidelines; and (5) failing to consider a closed period of disability. The Court addresses these arguments below.

**A.  Opinion of Ms. Duenas's Treating Physician**

Ms. Duenas contends that the ALJ improperly discounted the medical opinions in her record. Social Security regulations distinguish among the opinions of three types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the

---

[1] This ruling is available at 1982 WL 31386.

claimant, but review the claimant's file. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. § 404.1527(d). The Ninth Circuit has explained how the Commissioner is to consider medical evidence. Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's. *Holohan v. Massinari,* 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d). In addition, more weight shall be given to opinions that are explained than to those that are not and to the opinions of specialists concerning matters relating to their specialty over that of non-specialists. *Holohan*, 246 F.3d at 1202; 20 C.F.R. §§ 404.1527(c)(3)-(c)(5), 416.927(c)(3)-(c)(5). Finally, the testimony of a non-examining medical advisor who testifies at the hearing and is subject to cross examination is entitled to greater weight than the opinions of other non-treating, non-examining physicians. *Andrews*, 53 F.3d at 1042; *Lester*, 81 F.3d at 831.

If a treating physician's medical opinion is not inconsistent with other substantial evidence in the record, and is supported by medically acceptable clinical findings, it is generally given controlling weight. *Holohan,* 246 F.3d at 1202; 20 C.F.R. § 404.1527(d)(2). An ALJ need not, however, accept a physician's opinion that is brief, conclusory, or inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected check-off reports that did not contain any explanation of bases for conclusions). If an ALJ chooses to reject the uncontradicted opinion of a treating physician, he or she must provide "clear and convincing" reasons for doing so. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

The ALJ is responsible for resolving any conflicts in the medical record, including conflicts among medical opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). If the opinion of a treating physician is contradicted by a non-treating doctor, the

ALJ must provide "specific, legitimate reasons" supported by substantial evidence in the record for discrediting the treating physician's opinion. *Lester*, 81 F.3d at 830-31; *Andrews*, 53 F.3d at 1043. Specific, legitimate reasons for rejecting a medical opinion include reliance on a claimant's discredited subjective complaints and inconsistency with medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The contrary opinion of a non-examining physician cannot by itself justify rejecting the opinion of a treating or examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

If a treating physician's opinion is not given controlling weight, it is still entitled to deference. SSR 96-2p at 4, 61 Fed. Reg. at 34,491. An ALJ may not simply disregard a treating physician's opinion because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record. *Orn*, 495 F.3d at 631; *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it."). The opinion of a treating physician must be weighed using all the factors set out in 20 C.F.R. § 404.1527(c). SSR 96-2p at 4. The requisite factors include: the examining and treatment relationship, including the length and nature of that relationship; the specialization of the doctor; and the supportability and consistency of the medical opinion. 20 C.F.R. § 404.1527(c). The regulations offer these factors for consideration, but do not require a thorough discussion. *See Misener v. Astrue*, 926 F.Supp.2d 1016, 1032 (N.D. Ind. 2013) ("The reasons given by the ALJ are facially consistent with the factors an ALJ is instructed to consider when determining how much weight to give to a medical opinion.").

Ms. Duenas asserts that the ALJ improperly discounted the opinion of her primary care physician, Dr. Swena. Dr. Swena offered diagnoses of Ms. Duenas's medical conditions and an

assessment of her ability to work. The ALJ assigned "little to no weight to Dr. Swena's assessment." AR 60-61. Ms. Duenas argues that the ALJ erred in failing to comply with 20 C.F.R. § 404.1527(c) and in failing to provide specific and legitimate reasons to reject Dr. Swena's opinion.

Ms. Duenas contends that the ALJ failed to comply with the requirements of 20 C.F.R. § 404.1527(c) by not considering the specified factors in weighing the medical opinion of Dr. Swena. The ALJ's decision, however, demonstrates that the ALJ did consider the relevant factors. The ALJ noted that Ms. Duenas presented to Dr. Swena in August 2008 and discussed a number of occasions between September 2008 and October 2012 where Ms. Duenas visited Dr. Swena. AR 59-61. The ALJ's decision also included discussions of various examinations conducted by Dr. Swena including Romberg testing, a nerve conduction study, and fibromyalgia testing. AR 59. Further, the decision noted Dr. Swena's treatment of Ms. Duenas's muscle spasms, diabetes, blood pressure, and fibromyalgia pain. AR 60. The decision also specifically stated that Dr. Swena was Ms. Duenas's primary care physician, so specialization was not a relevant factor. *Id.* Finally, the ALJ addressed whether Dr. Swena's opinion was consistent with the record as a whole or supportable as the basis for discounting that testimony. Thus, although the ALJ did not specifically address the required factors in the decision he clearly considered all of the required factors when weighing the medical evidence.

Ms. Duenas also argues that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Swena's opinions. The ALJ rejected Dr. Swena's opinions because they were inconsistent with Dr. Swena's own medical records and were inconsistent with the record as a whole.

The ALJ noted several inconsistencies between Dr. Swena's assessment and his medical records. AR 60-61. As such, the ALJ concluded "Dr. Swena's assessment appear[ed] to be based entirely on the claimant's self-report rather than objective evidence. . . ." AR 61. The ALJ gave more weight to the contradicting opinions from two non-examining medical physicians, Drs. Berner and Alley, the state agency consultants who evaluated Ms. Duenas's impairments and limitations. AR 61.

The ALJ's conclusion that Dr. Swena's assessment of Ms. Duenas's limitations was inconsistent with Dr. Swena's own medical records is supported by substantial evidence in the record. Dr. Swena opined that Ms. Duenas could never manipulate or grasp, she could occasionally lift her right and left arm over shoulder level, and she could never balance, stoop, kneel, crouch, crawl, or climb. AR 736. Dr. Swena stated that he based his conclusions on Ms. Duenas's multiple tender muscle trigger points, her nerve conduction test, and her lumbar MRI. AR 737. As noted by the ALJ, however, Dr. Swena's conclusions were not supported by the results of Dr. Swena's testing on Ms. Duenas. Ms. Duenas only had tender points in approximately seven out of 18 areas and her nerve conduction study produced only mild findings. AR 733. Additionally, as the ALJ noted, there were no MRI results in Ms. Duenas's record. AR 61. The medical record suggests that Ms. Duenas never had an MRI, due to her claustrophobia. AR 123. Thus, the ALJ's determination that Dr. Swena's opinion was inconsistent with his own medical records is supported by substantial evidence in the record and constitutes a specific and legitimate reason to discount Dr. Swena's opinion.

There is also substantial evidence in the record showing that although Ms. Duenas sought treatment for various issues, they generally improved with treatment. *See* AR 455, 555-56 (Ms. Duenas's physical therapist noted that following Ms. Duenas's bunionectomy, she rated her

pain at "2/10" when presenting for physical therapy that subsequently resulted in full range of motion in the right foot); AR 602 (Dr. Carlson noted that Ms. Duenas had only "mild edema" and her x-rays showed "good healing"); AR 375, 819 (Dr. Swena noted that Ms. Duenas reported "Savella seem[ed] to work for the fibromyalgia," and that her "back pain and hip pain have gone away" with a vitamin D3 supplement); AR 578 (The Oregon Sleep Center records indicated that Ms. Duenas reported "very salient improvement" and a "rapid upswing in quality of life" after receiving a CPAP machine); AR 812-13 (Dr. Chang noted that in June 2010 Ms. Duenas reported that she was "feeling better" and that her pain overall was "less severe than before" and that she "[m]ay have some mild aches in hands and knees sometimes," but had been "active in house and yard work," was joining a wellness program three times a week, and her "pain level is mostly about 3/10."). This evidence is inconsistent with the significant limitations ascribed to Ms. Duenas by Dr. Swena. Accordingly, the ALJ's conclusion that Dr. Swena's medical opinion was inconsistent with Ms. Duenas's medical records as a whole is supported by substantial evidence in the record and is a specific and legitimate reason to discount Dr. Swena's opinion.

The ALJ's decision demonstrates that the ALJ considered the required factors. The ALJ also provided two specific and legitimate reasons to reject Dr. Swena's testimony. Accordingly, the ALJ did not err in weighing the medical evidence.

**B.  Compliance with SSR 82-62**

Ms. Duenas argues that the ALJ failed to make findings regarding the physical and mental demands of her past work required by SSR 82-62. At step four, the ALJ determines whether a claimant could perform his or her relevant past work. 20 C.F.R. §§ 404.1520. Although the burden of proof lies with the claimant at step four, *see, e.g.*, *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009), the ALJ still has a duty to make the requisite factual findings to support a conclusion that the claimant is capable of performing the

relevant past work. *Pinto*, 249 F.3d at 844 (citing SSR 82-62). The ALJ can meet this duty by comparing the claimant's RFC to the physical and mental demands of the claimant's past relevant work. *Id.* at 844-45 (citing 20 C.F.R. §§ 404.1520(e)). "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id.* at 845 (citing SSR 82-62).

SSR 82-62 explains the procedures for determining a disability claimant's capacity to do past relevant work as set forth in the regulations. It establishes that "sufficient documentation will be obtained" of a claimant's past work, including factual information about the work demands, including strength, endurance, manipulative ability, mental demands, and other job requirements. It also states that the claimant is the "primary source for vocational documentation" and that "in some cases" other sources, such as the Dictionary of Occupational Titles ("DOT"), may be used.

The regulations set out two different tests for determining whether a claimant is capable of performing his or her past relevant work. SSR 82-61.[2] In one, the ALJ assesses the claimant's ability to perform the actual demands of the particular past relevant job whereas the other assesses the claimant's ability to perform the functional demands of that work as generally required by employers in the national economy. *Id.* Either test is dispositive. *Id.* The Ninth Circuit has explained that to determine how a claimant's previous job was actually performed by a claimant, an ALJ may only consider a vocational report properly completed by the claimant or the claimant's own testimony. *Pinto*, 249 F.3d at 845 (citing SSR 82-61 and 82-41).

---

[2] This ruling is available at 1982 WL 31387.

In assessing whether a claimant can perform past relevant work as generally performed in the national economy, an ALJ may also consult other vocational sources and obtain the testimony of a vocational expert. *See* 20 C.F.R. §§ 404.1560(b)(2); 404.1566(d). According to the Ninth Circuit, the "best source for how a job is generally performed is usually the [DOT]." *Pinto*, 249 F.3d at 845. A job description in the DOT creates a presumption as to how that job is preformed. *Id.* at 845-46. A claimant may overcome that presumption by demonstrating that the duties in his or her past work were not those envisaged by the drafters of the category. *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986).

Here, the ALJ concluded that Ms. Duenas could perform the position of office manager as she actually performed, but relied upon the functional demands of that work as generally required by employers in the national economy to do so. Ms. Duenas testified about both her work history as well as her physical and mental limitations at the hearing. AR 77-100. Ms. Duenas also described some of the physical demands of her position as an office manager in a Work History Report. AR 237. The ALJ, however, did not address that testimony in his decision. Instead, the ALJ questioned a vocational expert and relied on DOT title 169.167-034 to determine the physical and mental demands of Ms. Duenas's past work as an office manager. AR 61-62.

Because the ALJ did not make any specific findings about the physical and mental demands of the office manager position as actually performed by Ms. Duenas in order to compare those demands to the RFC, he was not able to determine Ms. Duenas's ability to perform the actual demands of that past work. *Pinto*, 249 F.3d at 845.The ALJ did, however, comply with the requirements of SSR 82-62 by questioning the vocational expert about the DOT.

Although the ALJ concluded that Ms. Duenas could perform her past work as actually performed, he analyzed that work as generally performed. Because the ALJ did not make the requisite findings relating to how Ms. Duenas actually performed her past work as an office manager, the ALJ erred in concluding that Ms. Duenas could perform past relevant work as she actually performed. The Court finds this error to be harmless, however, because the ALJ made the requisite factual findings to support a conclusion that Ms. Duenas was capable of performing her past relevant work of office manager as it was generally performed in the national economy. With the assistance of the vocational expert's testimony, the ALJ compared Ms. Duenas's RFC to the DOT and concluded that Ms. Duenas could generally perform the physical and mental demands of an office manager. Thus, the ALJ's conclusion that Ms. Duenas could perform her past relevant work is supported by substantial evidence in the record despite the fact that the ALJ identified the past relevant work as being performed as Ms. Duenas actually performed it instead of identifying it as being performed as generally performed in the national economy.

## C.  RFC Determination

Ms. Duenas also argues that the ALJ failed to comply with the requirements of SSR 96-8p[3] by failing to provide a narrative discussion describing how the record evidence supports each conclusion, citing to specific medical evidence and to nonmedical evidence. Ms. Duenas asserts that there is no evidence to support the ALJ's conclusion that she was limited to sedentary work rather than less than sedentary work. Ms. Duenas also asserts there is no correlation between her severe impairments and the RFC limitations.

---

[3] This is available at 1996 WL 374184.

### 1.  Failure to rely on record evidence and provide a narrative

Ms. Duenas contends that the ALJ failed to comply with SSR 96-8p by not explaining how the medical evidence supported his conclusions. SSR 96-8p requires the ALJ to identify a claimant's functional limitations or restrictions and assess the claimant's work related abilities on a function-by-function basis, including a narrative discussion of both medical and nonmedical evidence.

The ALJ did, however, explain how the medical and nonmedical evidence supported his RFC determination. The ALJ discussed Ms. Duenas's treatment records from each treating source in detail, noting what, if any, limitations were supported by the opinions, what opinions were fully credited, and what evidence supported discounting aspects of the treating source opinion. The ALJ also discussed the opinions of the state agency consultants, and although he found them the most credible medical source, he included in Ms. Duenas's RFC limitations greater than opined by the consultants. It is not, however, error for an ALJ to give the claimant the benefit of the doubt and allow for greater limitations than opined by the reviewing physician. *See, e.g.*, *Gontes v. Astrue*, 913 F. Supp. 2d 913, 922 (C.D. Cal. 2012) (finding ALJ did not err in giving the plaintiff "the benefit of the doubt" and including in the RFC greater limitations than those opined to by the agency consultants); *Ivory v. Colvin*, 2013 WL 6182573 at *8 (E.D. Cal. Nov. 25, 2013) (finding the ALJ did not err in evaluating the medical record where the ALJ found the claimant lacked credibility, but "assessed a more restrictive RFC" than the limitations identified by the consultative examiner, "giving [the] plaintiff some benefit of the doubt"); *Cortez v. Colvin*, 2014 WL 1725796, at *6 (C.D. Cal. Apr. 30, 2014) (finding the ALJ did not err where the ALJ found the claimant was "less than fully credible" but nevertheless gave the claimant "the benefit of the doubt [and] found a more restrictive RFC" than those offered by consultative examiners).

PAGE 15 – OPINION AND ORDER

The ALJ determined that Ms. Duenas could stand or walk for about two hours and sit for six hours in an eight-hour workday. AR 57. The ALJ discussed at length how Ms. Duenas's medical evidence supported that determination. A variety of assessments made by Family Nurse Practitioner Hansell in 2009 and 2010 included obesity, hypertension, diabetes, and generalized anxiety. The ALJ concluded that although no doctor opined that obesity caused Ms. Duenas an inability to work, it "clearly affects her ability to stand and walk for extended periods." AR 61. Despite earlier reports from Ms. Duenas about generalized pain, the ALJ determined that both Dr. Chang and Physical Therapist Tanner reported in 2010 that Ms. Duenas was doing well with only mild pain symptoms.

The ALJ also determined that Ms. Duenas responded well to medical treatment. The ALJ concluded Dr. Carlson's medical records indicated steady improvement and minimal pain following Ms. Duenas's 2009 right foot bunion and neuroma. AR 59. The ALJ noted that Ms. Duenas reported successful treatment of her sleep apnea to Dr. Winde in 2010. AR 59-60. Thus, after reviewing Ms. Duenas's medical record as a whole, and properly discounting Dr. Swena's assessment, the ALJ concluded that the objective medical evidence "only supports mild impairment and pain." AR 60. These explanations support the ALJ's RFC.

The ALJ also explained why he discounted some of the non-medical testimony. Although the ALJ recognized Ms. Duenas testified to additional limitations than included in the ALJ's RFC determination, he did not find her testimony fully credible. Ms. Duenas has not challenged this credibility determination. Similarly, the ALJ found Robert Duenas, Ms. Duenas's husband, "merely recites the claimant's allegations" and "likewise lack[ed] credibility." AR 61. Ms. Duenas also does not challenge the ALJ's finding discounting her husband's credibility.

The ALJ provided a sufficient narrative and explanation of how the medical and nonmedical evidence supports his RFC determination and thus did not err.

### 2.    Failure to explain the sedentary exertional category

Ms. Duenas also contends that there is no evidence to support the ALJ's determination that she could perform sedentary work as opposed to being restricted further. The ALJ, however, explained that determination as well. The ALJ noted that both state agency doctors, Drs. Berner and Alley, opined that Ms. Duenas could perform light work rather than merely sedentary work. AR 111-12, 123. The ALJ explained that he found Ms. Duenas' limitations more severe than both of the state agency doctors, but noted that the opinions of Drs. Berner and Alley were "more consistent with the medical evidence than Dr. Swena's statement." AR 61. Thus, the ALJ supported his exertional category determination with a narrative discussion of the record evidence.

### 3.    Failure to include limitations relating to step two severe impairments

Ms. Duenas further contends that at step two the ALJ found Ms. Duenas's carpal tunnel syndrome and lumbosacral radiculopathy, among other impairments, to be severe impairments and yet did not include any corresponding limitations in the RFC. "A severe impairment need not necessarily 'correspond to limitations on a claimant's ability to perform basic work activities . . . '." *Thomas v. Comm'r of Soc. Sec. Admin.*, 480 F. App'x 462, 463 (9th Cir. 2012) (quoting *Bray*, 554 F.3d at 1228-29). To avoid error, an ALJ must provide a "sufficient explanation why [he or] she included no limitation for a severe impairment . . . ." *Giebudowksi v. Colvin*, 981 F.Supp.2d 765, 777 (W.D. Ill. 2013) (quoting *Taloff v. Astrue*, 2013 WL 1499027, at *10 (N.D. Ill. Apr. 11, 2013)). Accordingly, here the ALJ needed to provide some discussion of the evidence that supports an RFC that does not contain limitations corresponding to Ms. Duenas's severe (and nonsevere) impairments. The ALJ did so.

At step two, the ALJ found Ms. Duenas's carpal tunnel and lumbar sacral radiculopathy were severe impairments. Ms. Duenas was diagnosed with carpal tunnel syndrome in 2006 and deferred surgery because the supplements she took helped to reduce swelling and pain. AR 748. In 2008, Ms. Duenas had positive Tinnel's signs at both wrists, but her hand sensation was intact and she had no atrophy of the thenar muscles. AR 662. Also in 2008, Ms. Duenas underwent a nerve conduction study, which found that her upper extremity sensory findings showed normal median DSL and SNAP amplitude. AR 650. With respect to Ms. Duenas's radiculopathy, the 2008 nerve conduction study found only mild and chronic radiculopathy. *Id*. Thus, the ALJ cited to substantial evidence to support his conclusion that during the relevant time period, Ms. Duenas had only minimal limitations from her carpal tunnel syndrome and lumbosacral radiculopathy. AR 54, 59. Accordingly, the ALJ did not err in failing to include in the RFC limitations associated with Ms. Duenas's carpal tunnel syndrome and lumbosacral radiculopathy.

The ALJ also found at step two that Ms. Duenas had several other severe impairments. The ALJ's discussion of the medical evidence sufficiently explains the limitations ascribed to Ms. Duenas and the reasons for not ascribing limitations for certain conditions. Accordingly, the ALJ did not err by failing to provide limitations in the RFC for conditions he found to be severe at step two.

**D. Medication-Vocational Guidelines**

Ms. Duenas contends that the ALJ erred by failing to determine whether she is disabled pursuant to the Medical-Vocational Guidelines ("the Grids" or "Grid Rule"). The Grids are a matrix of Social Security regulations that determine whether an applicant's vocational factors of age, education, and past work experience determine disability. 20 C.F.R. Part 404, Subpt. P, App. 2; SSA, POMS, § DI 25025.005 (Feb. 13, 2015). If an ALJ determines a claimant cannot

do past relevant work in step four, the Grids are used in step five to determine disability. 20 C.F.R. § 404.1520 (a) (4).

Ms. Duenas alleges that she meets Grid Rule 201.06 and is therefore disabled within the meaning of the Social Security Act. Because the ALJ determined Ms. Duenas was not disabled at step four, the ALJ did not have a duty to proceed to step five or to consider any of the Grid Rules. Thus, the ALJ did not err in failing to consider the Grid Rules.

## E. Closed Period of Disability

Ms. Duenas asserts that the ALJ failed to analyze her claim for a possible closed period of disability. To support this assertion, Ms. Duenas notes that Dr. Swena's medical statement of October 3, 2012 evaluated Ms. Duenas's limitations over a closed period, from June 15, 2009 through September 4, 2012. AR 736. A claimant may be entitled to a closed period of disability if he or she can establish disability within the meaning of the statute, but is no longer disabled at the time of adjudication. 20 C.F.R. § 404.1594. To establish a closed period of disability, the evidence must show the onset date, the duration requirement, and the date disability ceased. *Id.*

Here, Ms. Duenas applied for disability benefits, alleging disability beginning June 15, 2009. AR 52. Ms. Duenas did not allege a closed period of disability or assert any change in her medical status to justify a closed period of disability. Instead, Ms. Duenas now suggests that because Dr. Swena evaluated Ms. Duenas for closed period of time, the ALJ should have considered Ms. Duenas's disability for that closed period of time. This argument fails for several reasons.

First, the ALJ found Ms. Duenas not to have been disabled at any time since the alleged onset date. AR 62. This necessarily includes a finding that she was not disabled during the time period of Dr. Swena's evaluation. Second, Dr. Swena's medical evidence is only one of many medical reports in Ms. Duenas's record, which spans from April 4, 2009 to September 4, 2012.

Finally, because the ALJ discounted Dr. Swena's opinion, the ALJ did not have a duty to address the specific time period Dr. Swena treated Ms. Duenas. Under the circumstances of this case, the ALJ did not err in failing to consider separately whether Ms. Duenas had a closed period of disability.

**CONCLUSION**

The Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 25th day of November, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge